UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DESIREE LEE SALTKILL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-25-CV-390-FB (HJB) |
| CAVENDER TOYOTA and TOYOTA MOTOR CREDIT CORPORATION, | § § § § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns two dispositive motions: the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry 14), filed by Defendant Cavender Toyota ("Cavender"), and the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry 19), filed by Defendant Toyota Motor Credit Corporation ("TMCC"). Pretrial matters have been referred to the undersigned for consideration pursuant to 28 U.S.C. § 636(b)(1). (Docket Entry 18.) For the reasons set out below, I recommend that Defendants' motions (Docket Entries 14 and 19) be **GRANTED,** and that this case be **DISMISSED WITH PREJUDICE**.

**I.   Jurisdiction.**

Plaintiff asserts claims for violations of the federal Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, and 42 U.S.C. § 1985(3). (Docket Entry 16, at 6, 9–11.) The Court has subject matter jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff also asserts claims for violations of related state laws, including the Texas Deceptive Trade Practices Act ("TDTPA") Tᴇx. Bᴜs. &

COM. CODE § 17.41 *et seq.*, the Texas Debt Collection Act ("TDCA") TEX. FIN. CODE § 392.001 *et seq.*, and the Texas Credit Reporting Act ("TCRA") TEX. BUS. & COM. CODE § 20.01 *et seq.* (Docket Entry 16, at 10.) The Court may exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

Cavender disputes the Court's subject matter jurisdiction over this case, but "a federal court always has jurisdiction to determine its own jurisdiction." *Brownback v. King*, 592 U.S. 209, 218 (2021).

**II.     Background.**

On November 26, 2024, Plaintiff entered into a Motor Vehicle Retail Installment Sales Contract (the "contract") with Cavender to finance the purchase of a brand new 2024 Toyota RAV 4 for $45,948. (Docket Entry 16, at 18.) Under the terms of the contract, Plaintiff took possession of a new car and agreed to make payments of $850.99 per month for 72 months. (*Id.*) The contract provided that Cavender could demand full payment and repossess the RAV4 if Plaintiff failed to timely pay her monthly balance. (*Id.* at 21–22.) The contract also assigned Cavender's interest in the contract to TMCC. (*Id.* at 23.)

Plaintiff's first car payment was due December 26, 2024. (Docket Entry 16, at 18.) No payment was made. Instead, on December 17, 2024, Plaintiff sent a notarized document to TMCC, which "propose[d] modifications to the contract," and purported to "provide instructions to pay off the balance." (*Id.* at 31.) Specifically, Plaintiff purports to unilaterally revise the contract to provide that her RAV 4 "may not be repossessed under any circumstances." (*Id.* at 32.) And as to payment, Plaintiff represents that because she "chose[] a 100% financed option per the contract and d[id] not want to commingle federal reserve notes with credit," she would fully satisfy the balance owed for her RAV4 with an "enclosed draft as prepayment." (*Id.* at 32.) The enclosed

2

document vaguely resembled a check and bore Plaintiff's handwritten endorsement. (*Id.* at 34.) According to Plaintiff, her "indorsement [sic] . . . provided more than enough financial security to pay off the principal's [sic] balance." (Docket Entry 16, at 32.)

TMCC disagreed. On January 15, 2025, TMCC sent Plaintiff a response, explaining that she was still bound by the contract she signed at the time she took possession of the RAV 4, and that she was therefore required to timely make her monthly payments "in US Dollars." (*Id.* at 41.) Still, no such payment was made.

On January 28, 2025, TMCC sent Plaintiff a Notice of Intention to Accelerate, explaining that if Plaintiff failed to make her past-due car payment by February 17, 2025, it would demand "the entire unpaid balance and take the vehicle from [her] (repossession)." (*Id.* at 70.) Again, no payment was made. On February 20, 2025, TMCC sent Plaintiff a Notice of Acceleration, explaining that, because she had failed to cure her default by paying off her past-due balance, Plaintiff was now obligated to "immediately pay [TMCC] the net amount [she] owe[d] on the contract (not just the past due payments)." (*Id.* at 82.) TMCC also warned Plaintiff that it may repossess the vehicle. (*Id.*)

Plaintiff filed suit on April 11, 2025. (Docket Entry 1.)[1] In her complaint, Plaintiff argues that she fully satisfied her debt by giving TMCC a self-endorsed bill of exchange for the balance on the contract and seeks a declaratory judgment to that effect. She also claims that Defendants have violated the FDCPA and related Texas consumer protection laws by continuing to ask her to

---

[1] In addition to filing a proposed complaint (Docket Entry 1-1)—which was subsequently docketed as Plaintiff's live complaint (Docket Entry 16) after the Court granted Plaintiff's motion to proceed *in forma pauperis* (*see* Docket Entries 9 and 15)—Plaintiff has filed an Emergency Motion for Temporary Restraining Order (Docket Entry 2) and Emergency Motion for Expedited Hearing (Docket Entry 3).

pay off a debt that she no longer owes and by falsely representing to her that she does, in fact, owe such a debt. (Docket Entry 16, at 6, 9–11.) Plaintiff also claims that Defendants violated the FCRA and related Texas laws by reporting her debt and failure to make car payments to credit reporting agencies, thereby lowering her credit score. (*Id.* at 10–11.) She also claims that Defendants have conspired to deprive her of property without due process by trying to repossess her vehicle, in violation of 42 U.S.C. 1985(3). (*Id.* at 10.) Additionally, Plaintiff claims that Defendants committed securities fraud by using her non-existent debt as collateral to engage in securities transactions. (*Id.* at 9, 11–13.) And finally, she claims that Defendants are equitably estopped from pursuing the debt because she already paid it in full by sending them an endorsed bill of exchange and because Defendants have not sufficiently demonstrated otherwise. (*Id.* at 9.)[2]

Both Defendants have moved to dismiss Plaintiff's complaint. (Docket Entries 14 and 19.)[3] Cavender seeks dismissal for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, on the merits under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 14.) TMCC seeks dismissal solely on the merits pursuant to Rule 12(b)(6). (Docket Entry 19.) On the merits, both Defendants argue that Plaintiff's claims should be dismissed because they all hinge upon meritless premise that her endorsed bill of exchange was a legitimate method of paying off her debt for the RAV4. (Docket Entry 14, at 7–9, 15; Docket Entry 19, at 4–5, 11–12.)

---

[2] Although she mistakenly presents it as a distinct cause of action, Plaintiff also seeks damages for mental anguish. (Docket Entry 16, at 9–11.) *See White v. United States*, 471 F. Supp. 3d 780, 790 (W.D. Tex. 2020) ("Plaintiff confuses damages recoverable for a cause of action.").

[3] After Defendants filed their motions to dismiss, Plaintiff filed a Motion for Declaratory Judgment (Docket Entry 24), an Emergency Motion to Compel Disclosure of Bonding Instruments and Notice of Trustee Status of Court and Defendants (Docket Entry 36), and an Emergency Motion to Stay Rule 26(f) Scheduling Deadlines and Discovery (Docket Entry 40). These motions will be addressed separately by the undersigned.

Plaintiff has responded to both motions (Docket Entries 17 and 21), and TMCC has filed a reply (Docket Entry 25).

**III.     Legal Standard.**

While both Defendants contend that Plaintiff's claims should be dismissed on the merits under Rule 12(b)(6), Cavender also challenges the Court's subject matter jurisdiction under Rule 12(b)(1).  Typically, "when a party files a motion to dismiss for lack of jurisdiction under [Rule] 12(b)(1) in conjunction with a motion to dismiss under Rule 12(b)(6), the jurisdictional challenge is addressed first." *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 481 (5th Cir. 2024). However, "[w]hen the issue of jurisdiction is intertwined with the merits," as it is here, the Court "must assume jurisdiction and proceed to the merits of the plaintiff's claims under Rule 12(b)(6)." *Id.* (quoting *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022)) (internal marks omitted).  "[W]hen subject matter jurisdiction is dependent on the same statute that forms the basis of the underlying claim, the jurisdictional question is tied up with the merits of the case." *Pickett*, 37 F.4th at 1029 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (3d ed. 2004)).  Here, the bases for the Court's federal question jurisdiction are the federal statutes creating the causes of action asserted by Plaintiff.  (*See* Docket Entry 16, at 2, 10.)  Accordingly, the jurisdictional and merits questions here are coterminous and the Court should therefore proceed directly to ruling on Defendants' Rule 12(b)(6) motions.

The Court may dismiss a complaint under Rule 12(b)(6) "based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Sims v. Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 420 (W.D. Tex. 2024).  A complaint lacks a cognizable legal theory "if it lacks an arguable basis in law or fact"—*i.e.*, "if it relies on an

indisputably meritless legal theory." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001). But even when the legal theories in a complaint are not indisputably meritless, it must also include "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only "when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a 12(b)(6) motion, "the Court assumes the truth of well-pleaded factual allegations and reasonable inference[s] therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (internal marks omitted). However, the Court does not assume the truth of "legal conclusions; mere labels; [t]hreadbare recitals of the elements of a cause of action; conclusory statements; [or] naked assertions devoid of further factual enhancement." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (quoting *Iqbal*, 556 U.S. at 678) (internal marks omitted). The scope of the Court's inquiry is generally "limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). However, the Court may also consider documents attached to the motion when they "are referenced in the complaint and are central to the plaintiff's claims." *Id.*

### IV. Discussion.

Plaintiff claims that (1) Defendants violated the FDCPA and related state laws by requesting payments for a non-existent debt; (2) Defendants violated the FCRA and related state laws by reporting non-payment by Plaintiff of a non-existent debt to credit reporting agencies; (3) Defendants' efforts to repossess the RAV4 constituted a conspiracy to deprive Plaintiff of her rightful property without due process in violation of 42 U.S.C. § 1985(3); (4) Defendants

6

committed securities fraud by using Plaintiff's non-existent debt as collateral; and (5) Defendants are equitably estopped from pursuing the debt because they already received an endorsed bill of exchange from Plaintiff.  (Docket Entry 16 at 6–13.)  All these claims are predicated on the same premise: that Plaintiff's endorsed bill of exchange was sufficient payment to satisfy the debt she owed under the contract.  (*See id*. at 7.)

As numerous courts have held, the premise for Plaintiff's claims is indisputably meritless. *See, e.g.*, *Whitfield v. Am. Express Nat'l Bank*, No. SA-24-CV-81-JKP, 2024 WL 1543236, at *2 (W.D. Tex. Apr. 9, 2024) ("Because an 'endorsed bill' is not legal tender, a plaintiff cannot satisfy his obligations under loan or credit agreement by submitting it as payment for the debt.") (collecting cases); *Charles v. Castro*, No. 5:20-CV-42-RWS-CMC, 2020 WL 5670110, at *2 (E.D. Tex. Sept. 24, 2020) ("Plaintiff's purported 'bill of exchange' is a document of his own creation and has no value.").  Indeed, another district judge in the San Antonio Division has already told Plaintiff that her bills of exchange are "worthless documents of . . . [her] own creation," and admonished her that claims resting on the legal theory that a debt may be satisfied with such documents are "consistently dismissed."  *Saltkill v. Navy Fed. Credit Union*, No. SA-25-CV-645-XR (W.D. Tex. June 13, 2025) (Docket Entry 17, at 3).  Given the spurious nature of the premise for her allegations, Plaintiff's claims should all be dismissed as "indisputably meritless."  *See Taylor*, 257 F.3d at 472.

Furthermore, because Plaintiff's claims are based on indisputably meritless legal theories, they cannot be salvaged by any amendment.  *See Whitfield*, 2024 WL 154326, at *3 (concluding that "amendment would be futile" where claims rested on meritless legal theory regarding endorsed bills).  Leave to amend is appropriate when "it appears [that] a more careful or detailed drafting might overcome the deficiencies."  *Id.* at *2 (citing *Hitt v. City of Pasadena*, 561 F.2d 606,

608–09 (5th Cir. 1977)). But Plaintiff's claims rest on indisputably meritless legal theories, such that "no amount of additional details c[ould] overcome [her] . . . complaint's deficiencies." *Whitfield v. Navy Fed. Credit Union*, 5:24-CV-82-HJB (W.D. Tex. Oct. 1, 2024) (dismissing with prejudice complaint for breach of contract based on defendant's refusal to accept endorsed bill as valid payment). Accordingly, Plaintiff should not be permitted leave to amend, and her claims should be dismissed with prejudice.

## V.   Conclusion and Recommendation.

Based on the foregoing, I recommend that Cavender's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry 14) and TMCC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry 19) be **GRANTED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.[4]

## VI.   Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

---

[4] The undersigned notes that Plaintiff filed an Emergency Motion for Temporary Restraining Order along with her original complaint. (*See* Docket Entry 2.) She is not entitled to such extraordinary relief, however, as she cannot show "a substantial likelihood of success on the merits." *See Anderson v. Maverick Bank*, No. P:25-CV-1-DC, 2025 WL 1842406, at *1 (W.D. Tex. Feb. 18, 2025) (citing *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012)). Regardless, because the Court should dismiss Plaintiff's complaint in its entirety with prejudice, Plaintiff's Emergency Motion for Temporary Restraining Order will be moot, and may ultimately be dismissed as such.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on July 11, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge